**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| BILLY GOAT TAVERN 1, INC., | ) | |
| BILLY GOAT MIDWEST, LLC, BILLY | ) | |
| GOAT NORTH II, INC., BILLY GOAT | ) | |
| VI, INC., BILLY GOAT INN, INC., | ) | |
| BILLY GOAT TAVERN WEST, LLC, | ) | |
| all d/b/a BILLY GOAT TAVERN, and all | ) | No. 20 CV 02068 |
| others similarly situated | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SOCIETY INSURANCE | ) | Honorable Judge Harry D. Leinenweber |
| | ) | Magistrate Judge Susan E. Cox |
| Defendants. | ) | |

<u>**MEMORANDUM IN SUPPORT OF DEFENDANT SOCIETY INSURANCE'S
MOTION FOR SUMMARY JUDGMENT**</u>

There is no insurance coverage under the Society Policy for Plaintiffs' claims for loss of

business income. Plaintiffs allege their businesses have slowed as a result of Illinois Governor

J.B. Pritzker's Executive Orders aimed at curbing the spread of COVID-19. However, those

intangible economic claims are not covered as a matter of law under the plain and unambiguous

terms of the insurance policy issued by Society.

To obtain "loss of Business Income" coverage under the Society Policy there must be

"direct physical loss of or damage to" property at Plaintiffs' premises that causes a necessary

suspension in operations. Plaintiffs did not suspend dine-in operations because of any physical

loss of or damage to property at their premises, but because of an external factor: the Executive

Orders seeking to limit the spread of COVID-19. Plaintiffs admit that they suspended their

operations in compliance with the Governor's Executive Orders implementing restrictions on the

public's ability to congregate in bars and restaurants. Those orders have nothing to do with

1

damage or loss to property. The point is to keep people away from one another, not away from damaged property or buildings.

Plaintiffs do not meet the Illinois legal standard for a claim for business income loss based on direct physical loss to covered property. Under Illinois law, a "physical" loss or damage means an alteration to the structure, composition, or form of Plaintiffs' tangible property. This standard is not met where a business, like Plaintiffs', suffers only intangible, economic losses. Here, all properties are physically unchanged and undamaged, and, in fact, many are in use, preparing and serving food for off-premises enjoyment. In short, the undisputed facts establish that Plaintiffs' loss of business income was not caused by a "Covered Cause of Loss," or "direct physical loss of or damage to covered property at the described premises" as required by the Society Policy.

Therefore, Defendant Society is entitled to summary judgment and a declaration that there is no insurance coverage under the Society Policy for Plaintiffs' claims

## I.    SOCIAL DISTANCING EXECUTIVE ORDERS ISSUED BY GOVERNOR PRITZKER.

Illinois Governor J.B. Pritzker, like other governors around the country, entered executive orders that required restaurants to stop providing food and beverages for on-premises consumption in order to enable social distancing and minimize the spread of COVID-19. As a result of Governor Pritzker's COVID-19 related Executive Orders, Plaintiffs have had to temporarily limit their business to off-premises dining, such as take-out or delivery orders, and have allegedly incurred a loss of income as a result.

Beginning in March, Governor Pritzker, issued several executive orders (collectively, "the Executive Orders") that are relevant to this litigation. Executive Order 2020-07 was issued on March 16, 2020 ("the March 16 Order") and states that "COVID-19 is a novel and severe

acute respiratory illness that can spread among people through respiratory transmission." (Society's Statement of Material Undisputed Facts ("SOF") ¶¶ 20-21.) As a result, "social distancing, which consists of maintain [sic] at least a six-foot distance between people, is the paramount strategy for minimizing the spread of COVID-19." (*Id*. at ¶ 22.) "[T]he number of suspected COVID-19 cases in Illinois is increasing exponentially . . . indicating that drastic social distancing measures are needed." (*Id*.) Accordingly, it provided:

> Section 1. Beginning March 16, 2020 at 9 p.m. through March 30, 2020, all businesses in the State of Illinois that offer food or beverages for on-premise consumption—including restaurants, bars, grocery stores, and food halls—must suspend service for and may not permit on-premises consumption. <u>Such businesses are permitted and encouraged to serve food and beverages so that they may be consumed off-premises, as currently permitted by law, through means such as in-house delivery, third-party delivery, drive-through, and curbside pick-up. In addition, customers may enter the premises to purchase food or beverages for carry out.</u>

(*Id*. at ¶ 23.) The reason for the prohibition of on-premises consumption of food at restaurants, as specified in the March 16 Order, is to reduce the transmission of COVID-19 because public dining "usually involves prolonged close social contact contrary to recommended practice for social distancing." (*Id.* at ¶ 24.)

Executive Order 2020-10 was issued on March 20, 2020 ("the March 20 Order"). (*Id*. at ¶ 25.) The purpose of the March 20 Order was "for the preservation of public health and safety throughout the entire State of Illinois and to ensure that our healthcare delivery system is capable of serving those who are sick . . . [and] to slow and stop the spread of COVID-19." (*Id*. at ¶ 27) The March 20 Order required all businesses and operations in the state to cease, with the exception of "Essential Businesses and Operations," which it "encouraged" to remain open. (*Id*. at ¶¶ 26, 29.) It also prohibited gatherings of more than ten people. (*Id*. at ¶ 26.) "Essential Businesses and Operations" included "[r]estaurants and other facilities that prepare and serve

3

food, but only for consumption off-premises, through such means as in-house delivery, third-party delivery, drive through, curbside pick-up, and carry-out." (*Id*. at ¶ 28.) The order further required Illinois residents to "shelter in place" but allowed citizens to leave their homes to perform Essential Activities, including obtaining and delivering food, and to operate Essential Businesses and Operations. (*Id*. at ¶ 31.) Executive Order 2020-18, issued on April 1, 2020 ("April 1 Order"), again recognized that "social distancing, which requires maintaining at least a six-foot distance between people, is a paramount strategy for minimizing the spread of COVID-19 in our communities[,]" and that "drastic social distancing measures are needed[.]" (*Id*. at ¶ 36.)

**II.** **THE SOCIETY POLICY REQUIRES A "DIRECT PHYSICAL LOSS OF OR DAMAGE TO COVERED PROPERTY" FOR THERE TO BE COVERAGE UNDER THE BUSINESS INCOME AND EXTRA EXPENSE ADDITIONAL COVERAGES.**

The insurance contract at issue is a Businessowners Policy, with policy number BP17022546-2, between the named Plaintiffs and Society Insurance for the period of August 26, 2019 to August 26, 2020 ("the Society Policy"). The Society Policy is composed of a number of forms; however, the allegations in the Complaint relate to Form TBP2 (05-15), Businessowners Special Property Coverage Form ("the Special Property Coverage Form").[1] (*Id*. at ¶ 14.)

The Special Property Coverage Form consists of eight parts. Part A. Coverage describes the coverages available under the Special Property Coverage Form and is divided into six numbered sections: 1. Covered Property, 2. Property Not Covered, 3. Covered Causes of Loss, 4. Limitations, 5. Additional Coverages, and 6. Coverage Extensions.

Part A begins:

**A.** **Coverage**

---

[1] All references to the Society Policy should be read as referring to the Businessowners Special Property Coverage Form contained in the Society Policy.

We will pay for <u>direct physical loss of or damage to Covered Property</u> at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

> **1.    Covered Property**
> Covered Property includes Buildings as described under Paragraph **a.** below, Business Personal Property as described under Paragraph **b.** below, or both, depending on whether a Limit of Insurance is shown in the Declarations for that type of property. . . .
>
> > **a.    Buildings**, meaning the buildings and structures at the premises described in the Declarations . . .
> >
> > **b.    Business Personal Property** located in or on the buildings at the described premises or in the open (or in a vehicle) within 100 feet of described premises, including: . . .

(*Id*. at ¶ 15 (emph. added).)   The term Covered Cause of Loss is defined in Section 3 of Part A and states:

> **3.    Covered Causes Of Loss**
> Direct Physical Loss unless the loss is excluded or limited under this coverage form.

(*Id*. at ¶ 16.)

Plaintiffs allege they submitted a claim for Business Income, an Additional Coverage under Section 5, paragraph (g) of Part A.  (*Id*. at ¶ 17.)  It provides, in pertinent part:

> **5.    Additional Coverages**
>
> **g.  Business Income**
> **(1)**  Business Income
>
> > **(a)**  We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your "operations" <u>during the "period of restoration."</u> The suspension must be caused by a <u>direct physical loss of or damage to covered property</u> at the described premises.  The loss or damage must be caused by or result from a <u>Covered Cause of Loss.</u> . . .
> >
> > **(b)**  We will only pay for loss of Business Income that you sustain during the "period of restoration" and that occurs within 12 consecutive months after the date of <u>direct physical loss or damage.</u>

(*Id*. (emph. added).)

"Period of Restoration" is a defined term under the policy, and refers to the period of time that:

a.  Begins immediately after the time of <u>direct physical loss or damage</u> for Business Income or Extra Expense coverage caused by or resulting from any covered Cause of Loss at the described premises; and

b.  Ends on the earlier of:

(1)  The date when the property at the described premises should be <u>repaired, rebuilt or replaced</u> with reasonable speed and similar quality; or

(2)  The date when business is resumed at a new permanent location.

(*Id*. at ¶ 18 (emph. added).)

## AS A MATTER OF LAW THERE IS NO COVERAGE UNDER THE SOCIETY POLICY

The only issue in this case is a question of law: whether the losses claimed by Plaintiffs fall within the coverage provided by the Society Policy. The existence of coverage is an essential element of Plaintiffs' case, and Plaintiffs have the burden of proving their loss falls within the terms of the Society Policy. *Fiorentini v. Paul Revere Life Ins. Co*., 893 F.3d 476, 480 (7th Cir. 2018) (citing *St. Michael's Orthodox Catholic Church v. Preferred Risk Mut. Ins. Co*., 146 Ill. App. 3d 107, 109-110, 496 N.E.2d 1176 (Ill. App. Ct 1986)). The court must construe the policy as a whole "'taking into account the type of insurance for which the parties have contracted, the risks undertaken and purchased, the subject matter that is insured and the purposes of the entire contract.'" *Westfield Ins. Co. v. Rose Paving Co*., No. 12 C 40, 2014 WL 866119, at * 2 (N.D. Ill. March 5, 2014) (quoting *Crum & Foster Managers Corp. v. Resolution Trust Corp*., 156 Ill. 2d 384, 391, 620 N.E. 2d 1073 (Ill. 1993)). "Insurance policies must be construed and enforced as made by the parties; the courts have no right to make a new contract

6

for the parties. . . . ." *Schewe v. Home Ins. Co.*, 80 Ill. App. 3d 829, 832, 400 N.E. 2d 501 (Ill. App. Ct. 1980). Clear and unambiguous policy terms and provisions must be taken in their plain, ordinary and popular sense. *Medmarc Cas. Ins. Co. v. Avent America, Inc.*, 653 F. Supp. 2d 879, (N.D. Ill. 2009) (citing *Travelers Ins. Co. v. Eljer Mfg., Inc.,* 197 Ill.2d 278, 292-93, 757 N.E.2d 481 (2001)).

I. **PLAINTIFFS' CLAIM WAS NOT THE RESULT OF "PHYSICAL" LOSS OR DAMAGE, NOR WAS IT CAUSED BY A COVERED CAUSE OF LOSS UNDER THE SOCIETY POLICY AS A MATTER OF LAW.**

    A. **A "PHYSICAL" LOSS IS ONE THAT CAUSES A CHANGE IN THE PHYSICAL CHARACTERISTICS OF THE COVERED PROPERTY.**

As Plaintiffs admit, the Business Income additional coverage of the Society Policy covers loss of business income sustained due to a suspension of the insured's operations only if that suspension is caused by a "direct <u>physical</u> loss of or damage <u>to covered property</u> at the described premises." (Compl. Ex. A at 94, ¶ (g)(1)(a) (emph. added).) Plaintiffs do not have a claim for "direct physical loss of or damage to covered property at the described premises." Under the plain language of the Society Policy and Illinois law, the term "physical" in the phrases "direct physical loss of or damage to covered property" and "direct physical loss" clearly modifies "loss of or damage to" and "loss." *Eljer Mfg., Inc.*, 197 Ill. 2d at 301*; see also, Ward Gen'l Ins. Servs., Inc. v. Employer's Fire Ins. Co.*, 7 Cal. Rptr. 3d 844, 489 (Cal. Ct. App. 2003) (finding that the word "physical" modifies both loss and damage because "[m]ost readers expect the first adjective in a series of nouns or phrases to modify each noun or phrase in the following series unless another adjective appears").

Under Illinois law, a property sustains a "physical" injury when it "is altered in appearance, shape, color or in other material dimension." *Eljer Mfg., Inc.*, 197 Ill. 2d at 301. Conversely, intangible damage, such as diminution in value, is not a "physical" injury to

property. *Id.* at 301-02. The same is true in the Seventh Circuit, which requires a change in the physical, as opposed to intangible, characteristics of property to satisfy a "physical" loss requirement. *Windridge of Naperville Condo v. Philadelphia Indem. Ins. Co.,* 932 F.3d 1035, 1040 (7th Cir. 2019) (Illinois law); *see also Advance Cable Co. v. Cincinnati Ins. Co.*, 788 F.3d 743, 747 (7th Cir. 2015) (Wisconsin law). As explained by a leading treatise on insurance law (*Couch on Insurance*): "[t]he requirement that the loss be 'physical,' given the ordinary definition of that term, is widely held to exclude losses that are intangible or incorporeal, and, thereby to preclude any claim against the property insurer when the insured merely suffers a detrimental economic impact unaccompanied by a distinct, demonstrable, physical alteration of the property." 10A *Couch On Insurance* § 148.46 (3d Ed. 2019).

The interpretation of "physical" in *Eljer Manufacturing* is also consistent with the decisions of courts across the country that have interpreted the phrase "direct physical loss." As recently stated by the Southern District of Florida, a "direct physical loss 'contemplates an actual change in insured property then in a satisfactory state, occasioned by accident or other fortuitous event directly upon the property causing it to become unsatisfactory for future use or requiring that repairs be made to make it so.'" *Mama Jo's, Inc. v. Sparta Ins. Co.*, 2018 WL 3412974, at *9 (S.D. Fla. June 11, 2018) (citation omitted). *See also, Ward Gen. Ins. Servs.*, 114 Cal. App. 4th at 556 ("direct physical loss" requires loss of something that "has a material existence, formed out of tangible matter, and is perceptible to the sense of touch"); *Universal Image Prods., Inc. v. Fed. Ins. Co.*, 475 Fed. Appx. 569 (6th Cir. 2012) (requirement of "direct physical loss or damage" not met where presence of bacteria in air conditioning system did not cause tangible damage to insured premises); *Columbiaknit, Inc. v. Affiliated FM Ins. Co.,* No. Civ. 98–434–HU, 1999 WL 619100, at *7 (D.Or. Aug.4, 1999) (exposure of clothing to elevated spore counts was

8

not "physical loss" in the absence of a "distinct and demonstrable physical change to the garment necessitating some remedial action"); *Mastellone v. Lightning Rod Mut. Ins. Co.*, 175 Ohio App. 3d 23, 884 N.E. 2d 1130, 1144 (Ohio Ct. App. 2008) (holding that mold does not constitute "physical damage" because "[t]he presence of surface mold did not alter or affect the structural integrity of the [property]").

There has been no alteration in the structure or composition of Plaintiffs' covered property, and therefore there has been no "direct physical loss of or damage to covered property at the described premises" and no "Covered Cause of Loss" within the meaning of the Society Policy. *Eljer Mfg., Inc.*, 197 Ill. 2d at 301-02. While Plaintiffs allege, in a cursory fashion, that "COVID-19 rendered the covered property at the premises . . . unsafe and inaccessible for dine-in customers" (Compl. ¶ 53), the very Executive Orders relied on by Plaintiffs evidences that it is groups of people, without adequate social distancing, that are unsafe in <u>any</u> location because of COVID-19. (SOF ¶¶ 22, 24, 26, 30.) It is not Plaintiffs' premises themselves that are unsafe, but the possible threat of transmission among large groups of people within any area. This distinction is demonstrated by the fact that under the March 16 Executive Order, Plaintiffs are allowed, encouraged, and, in fact, are continuing to operate on their premises for the purposes of selling food and beverages for off-premises consumption. (*Id*. at ¶¶ 23, 28) Plaintiffs have presented no evidence or allegations that the structural integrity of any of their restaurants or business personal property have been altered, or their physical characteristics have been changed—the walls remain standing, the roofs have not been torn off, and the property remains untouched by fire or water—and, in fact, the Plaintiffs are still using many of the restaurants for preparing and serving food for takeout and delivery. (*Id*. at ¶ 41.) Consequently, Plaintiffs have not suffered the type of harm covered by the Society Policy, nor have they suffered a harm

resulting from a Covered Cause of Loss. Therefore, there is no coverage under the Society Policy as a matter of law and summary judgment should be granted in Society's favor.

**B.    THE PARTIAL TEMPORARY LIMITATION OF PLAINTIFFS' OPERATIONS IS NOT A "PHYSICAL" LOSS OR DAMAGE AS A MATTER OF LAW.**

Plaintiffs' allegation that Governor Pritzker's Executive Orders have temporarily limited their ability to provide on-site consumption of food and beverages does not, as a matter of law, constitute a "physical" loss or damage. This temporary, partial limitation of business operations is an intangible financial situation, not an alteration in the tangible, physical characteristics of the property. The appearance, shape, structural integrity, nor any other physical characteristic of the property have changed. Rather, Plaintiffs' alleged harm is an intangible change in the available business operations similar to a change in zoning resulting in different hours a business can be open or a temporary suspension of a liquor license.

The only court in Illinois to consider whether a limitation on use constitutes "physical" property damage rejected that proposition. In the context of a third-party liability policy, the court in *Mutlu v. State Farm Fire and Casualty*, denied recovery where the plaintiff sought coverage for the defense and indemnity of a lawsuit that alleged plaintiff deprived other condominium owners in his building of the use of hot water. 337 Ill. App. 3d 420, 423, 785 N.E. 2d 951 (Ill. App. Ct. 2003). The policy at issue insured against liability for property damage, defined as "physical damage to or destruction of tangible property, including loss of use." *Id.* at 426. The court found that under the Illinois Supreme Court's decision in *Eljer Manufacturing*, the loss of use of hot water did not constitute "physical" damage, and held that there was no coverage for loss of use of tangible property unless physical damage or destruction was also shown. *Id.* at 431.

*Mutlu* is consistent with the opinions of sister courts that have held a mere temporary change or limitation on the use of the insured premises or property, unaccompanied by a physical alteration of the property, does not constitute physical loss or damage under first-party property insurance policies. In *Roundabout Theatre Company v. Continental Casualty,* for example, the Appellate Division of the Supreme Court of New York held there was no "direct physical loss or damage" under an insurance policy where a plaintiff theater company lost all access to its premises due to a municipal order that closed the street the theater was located on. 302 A.D.2d 1 (N.Y. App. Div. 2002). The order was issued as a result of a construction accident on a nearby property, but the premises of the theater did not sustain any physical damage. *Id*. at 3. The street was closed for nearly a month "because of the substantial damage to the area and the danger from the partially collapsed scaffold." *Id*. As a result, the theater was completely inaccessible to the public and forced to cancel all performances. *Id*. The court rejected the plaintiff's argument that "loss" should be read as including "loss of use" and held the policy unambiguously required direct physical damage to the theater itself for coverage. *Id*. at 7; *see also*, *Newman Myers Kreines Gross Harris, P.C. v. Great Northern Ins. Co*., 17 F. Supp. 3d 323, 331 (S.D.N.Y. 2014) (finding that the words "direct" and "physical" require "actual, demonstrable harm of some form to the premises itself, rather than forced closure of the premises for reasons exogenous to the premises themselves") (emph. added).

The Eighth Circuit reached the same conclusion in *Pentair v. American Guarantee and Liability Insurance*, holding the mere loss of use and function of a factory was not a direct physical loss, where a factory in Taiwan was shut down due to an earthquake that disabled the electrical substation powering the factory. 400 F.3d 613 (8th Cir. 2005). Although the factory itself did not suffer any physical harm, it was unable to operate without power and the plaintiff

11

sought to recover losses and extra expenses caused by the shutdown. *Id*. at 614. The insuring agreement provided coverage for "all risk of direct physical loss of or damage to" the property described in the agreement. *Id*. at 614. The court held that even though the factory could not perform its intended function, the mere loss of use or function did not constitute "direct physical loss or damage." *Id*. at 615.

The Eighth Circuit subsequently held a United States Department of Agriculture embargo on imports of beef from Canada due to mad cow disease was not a direct physical loss. *Source Food Tech. v. U.S. Fid. and Guaranty*, 465 F.3d 834, 835 (8th Cir. 2006). The plaintiff owned a load of beef product that had been manufactured, packaged, and loaded onto a truck by its supplier in Canada. *Id*. Although there was no evidence that the plaintiff's beef product was contaminated by mad cow disease, the plaintiff contended that the loss of use, function, and access to it constituted a "direct physical loss" under the terms of its policy. *Id*. at 835-36. The court held that because the property, namely the beef product, was not physically damaged or contaminated, the plaintiff had failed to establish a direct physical loss. *Id*. at 837-38.

Courts have also found that reduced consumer demand resulting from a limitation on an insured's business operations at the insured premises due to a governmental order is not a "direct loss." *Brothers Inc. v. Liberty Mut. Fire Ins. Co.*, 268 A.2d 611 (D.C. 1970). In *Brothers*, the local government imposed a 5:30 p.m. curfew and prohibited the sale of alcoholic beverages in response to riots following the assassination of Martin Luther King, Jr. *Id*. at 611-12. The insured's policy covered "direct" losses to covered property from riot and civil commotion; however, the Court held that the policy did not provide coverage for the plaintiff's claims because the "business 'falloff'" resulting from the inability to conduct business on its premises

after 5:30 p.m. was not a "direct" loss by a riot. *Id.* at 613. Rather, the court found that "[a]t the most, the loss incurred here was an indirect, if not remote loss resulting from riots." *Id.*

The phrase "direct physical loss" requires more than what Plaintiffs have alleged here: a temporary and partial limitation of operations at its premises. Such a claim is insufficient to bring it within the express terms of the insurance contract between the parties. "Direct physical loss" requires damage to the structural integrity of Plaintiffs' restaurants. Such is not the case here where Plaintiffs' restaurants have sustained no tangible change in their physical structure or composition. Plaintiffs continue to operate their businesses as intended, as a restaurant, with their operations temporarily limited to take-out and delivery. Therefore, as a matter of law there is no coverage under the Society Policy.

## C. THE PERIOD OF RESTORATION CLAUSE IS FURTHER EVIDENCE THAT "PHYSICAL" LOSS OR DAMAGE REQUIRES A TANGIBLE CHANGE IN THE PHYSICAL CHARACTERISTICS OF PROPERTY.

The fact that the Business Income Additional Coverage of the Society Policy "will only pay for loss of Business Income that [the policyholders] sustain[s] during the 'period of restoration'" further demonstrates the meaning of the requirement of "physical" loss or damage. Under the policy definition, the "period of restoration" begins with the "direct physical loss or damage," and ends on the earlier of "the date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality" or "when business is resumed at a new permanent location." (SOF at ¶ 18.)

This Court is to construe the policy as a whole and give meaning to each provision. *Eljer Mfg., Inc.*, 197 Ill. 2d at 292. The definition of "period of restoration" provides additional context to the intended meaning of "physical loss or damage" as used in the Society Policy. Read together, it is clear the phrase "physical loss of or damage to" does not encompass a

temporary limitation on use, without more.  Rather, it refers to a loss or damage that requires the repair, rebuilding, or replacement of the property.  *See, e.g.*, *Newman Myers*, 17 F. Supp. 3d at 332 (explaining that use of "repair" and "replace" in period of restoration clause "contemplates physical damage to the insured premises as opposed to loss of use of it"); *Roundabout Theatre*, 302 A.D.2d at 8 (same).  Providing coverage for a period of restoration where there is no need for restoration because the property has not been physically altered would lead to an absurd result and must not be adopted.  *U.S. Fire Ins. Co. v. Hartford Ins. Co.*, 726 N.E.2d 126, 128 (Ill. Ct. App. 2000) ("A strained, forced, unnatural or unreasonable construction [of an insurance policy], or one which would lead to an absurd result, must not be adopted.").

Here, there is no "period of restoration" because there is nothing on the Plaintiffs' premises that needs to be repaired, rebuilt, or replaced and no reason for Plaintiffs to move their businesses to a new location.  The facts establish the very opposite of this requirement – that Plaintiffs continue to use their restaurants to prepare and serve take-out and delivery.  (SOF ¶ 41.)  To allow for losses that do not require repair, rebuilding, or replacement would impermissibly render the period of restoration provision meaningless.  As further demonstrated by these additional requirements for the coverage Plaintiffs seek, there is no genuine issue of material fact regarding the cause of Plaintiffs' reduction in business, and the cause of Plaintiffs' reduction in business does not constitute "physical loss or damage" to the described premises or a Covered Cause of Loss as defined in the Society Policy.  As a result, summary judgment should be entered in Society's favor on both counts of the Complaint.

## CONCLUSION

WHEREFORE, the Defendant, Society Insurance, respectfully requests that this Honorable Court enter an order granting summary judgment in its favor and against Plaintiffs as to the Plaintiffs' Complaint in its entirety; declaring there is no coverage for Plaintiffs' claims

14

under the Society Policy; and granting Society such other and further relief as this Court deems

just.

Date:   May 27, 2020                              Respectfully submitted,

                                                  Society Insurance

                                                  By:    /s/ Thomas B. Underwood

Thomas B. Underwood (#3122933)
Michael D. Sanders (##6230187)
Michelle A. Miner (#6299524)
Amy E. Frantz (#6312526)
PURCELL & WARDROPE, CHTD.
10 South LaSalle Street, Suite 1200
Chicago, IL 60603
(312) 427-3900
tbu@pw-law.com
msanders@pw-law.com
mminer@pw-law.com
afrantz@pw-law.com